NRM 07-259 2/26/08

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BOBETTE SUTER | : | |
| | : | |
| VS. | : | C.A. No. 07-456 ML |
| | : | |
| WATCH HILL YACHT CLUB | : | |

# PLAINTIFF'S PRE-TRIAL STATEMENT

## I. Summary of Basic Facts

On August 7, 2006, Bobette Suter, a resident of the State of New York, was operating her J-37 sloop sailing vessel, the "S/V ELUSIVE" in the vicinity of the Watch Hill Yacht Club ("WHYC"), which provided a marina and mooring field located at Westerly, Rhode Island. WHYC provided its facilities for the use of its members, as well as for use by guests who were members of any other bona fide yacht club. Suter, though not a member of the WHYC, was a member of bona fide yacht club and therefore had mooring privileges at WHYC.

Upon approaching the WHYC, Suter radioed WHYC's launch operator to request a mooring assignment, in accordance with WHYC's Guest Services guidelines. In response to her request, WHYC launch operator Beth Kingsley directed Suter to a particular mooring field and advised her to choose among any of the four moorings available at that location. In reliance on Kingsley's instructions, the S/V ELUSIVE entered the field and approached mooring #5. Approximately twenty feet from the mooring, however, while traveling at a speed of 1 knot, the S/V ELUSIVE made contact with a rock submerged approximately four feet eight inches below the surface of the water. The S/V ELUSIVE sustained extensive damages to its keel, shaft propeller, and bottom. The damages caused the vessel to take on water, and required hauling by Dodson Boatyard. At no time was Suter warned of the obstruction by Kingsley or any other

WHYC employee. The rock's location was not designated by a buoy or any other warning of any kind.

On September 7, 2006, Suter paid Dodson Boatyard the sum of $60,609.03 for repairs of the damages sustained. Later, on February 15, 2007, Suter paid an additional $9,009.21 as a supplement to the initial estimate. Accordingly, Suter's total damages in this matter amount to $69,618.24.

## II. Summary of Legal Arguments and Issues

In this civil action, Suter contends that the damages to the S/V ELUSIVE were directly caused by the negligence of WHYC, individually and through its employee, Beth Kingsley. Suter submits that the legal framework as to negligence in this type of situation is rather straightforward.

The First Circuit Court of Appeals has held that a "wharf owner must exercise diligence to maintain its berths in a safe manner and to remove any 'dangerous obstruction' or warn of its existence." *Sailor Inc. F/V v. City of Rockland*, 428 F.3d 348, 351 (1st Cir. 2005) (quoting *Pan Am. Grain Mfg. Co. v. P.R. Ports Authority*, 295 F.3d 108, 114-15 (1st Cir. 2002)). This duty extends "to dangerous conditions of which the wharf owner knows or should have known." *Id.* (citing *Smith v. Burnett*, 173 U.S. 430, 433 (1899)). "Although a wharfinger does not guarantee the safety of vessels coming into his wharves, he is bound to exercise reasonable diligence in ascertaining the condition of the berths thereat, and, if there is any dangerous obstruction, to remove it, or to give due notice of its existence to vessels about to use the berths." *Smith*, 173 U.S. at 433. *See Trade Banner Line, Inc. v. Caribbean S.S. Co., S.A.*, 521 F.2d 229, 230 (5th Cir. 1975) ("It is well settled that a wharfinger is not the guarantor of the safety of a ship coming to his wharf. He is, however, under a duty to exercise reasonable diligence to furnish a safe berth

and to avoid damage to the vessel. This includes the duty to ascertain the condition of the berth, to make it safe or warn the ship of any hidden hazard or deficiency known to the wharfinger or which, in the exercise of reasonable care and inspection, should be known to him and not reasonably known to the shipowner.").

In light of this legal framework, Suter specifically asserts that the WHYC failed to exercise reasonable diligence to provide a safe berth to Suter, who was lawfully using the facilities at the time her vessel struck the rock in the WHYC mooring field. Suter additionally asserts that WHYC negligently failed to warn her of the location of the rock, which was an unexpected hazard and a danger of which it knew or should have known in the ordinary course of diligence.

Respectfully submitted,
Bobette Suter

By her Attorneys,

/s/ Kelly N. Michels

James T. Murphy, Esq. #1698
Kelly N. Michels, Esq. #6478
Hanson Curran LLP
146 Westminster Street
Providence, Rhode Island 02903
(401) 421-2154 – telephone
(401) 521-7040 – fax
jtm@hansoncurran.com
knm@hansoncurran.com

**CERTIFICATION**

I hereby certify that on February __, 2008, I electronically filed the within Statement using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Kelly N. Michels